IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE CHARLES BENJAMIN, JR., : <br>    Plaintiff : <br> : <br> v. : <br> : <br> WARDEN BRIAN S. CLARK, *et al.*, : <br>    Defendants : | No. 1:20-cv-1991 <br><br> (Judge Rambo) |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 10) *pro se* Plaintiff George Charles Benjamin, Jr. ("Plaintiff")'s complaint (Doc. No. 1). For the following reasons, the Court will grant the motion to dismiss.

## I.   BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Benner Township in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action on October 29, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 against Warden Brian S. Clark ("Clark"), Jon Addison ("Addison"), Brenda Hopper ("Hopper"), Gregory Briggs ("Briggs"), Chad Saylor ("Saylor"), Jeffrey Haste ("Haste"), Mike Pries ("Pries"), George P. Hartwick, III ("Hartwick"), Joseph A. Crucillo ("Crucillo"), Frederick Lighty ("Lighty"), Guy Beneventano ("Beneventano"), Tucker Hill ("Hill"), Josh Autry, Esq. ("Autry"), Frank J. Lavery ("Lavery"), and Stephen B. Edwards ("Edwards"). (Doc. No. 1.) Plaintiff also paid

the requisite $400.00 filing fee.  Accordingly, in an Order dated October 30, 2020, the Court directed service of the complaint upon Defendants.  (Doc. No. 4.) Defendants filed their motion to dismiss (Doc. No. 10) on December 28, 2020 and their brief in support (Doc. No. 11) on January 11, 2021.

In his complaint, Plaintiff alleges that on March 6, 2018, he was arrested by the Harrisburg police and was incarcerated at the Dauphin County Prison ("DCP"), subject to a cash bail amount of $200,000.  (Doc. No. 1 at 5-6.)  On March 7, 2018, the Pennsylvania Board of Probation and Parole ("PBPP") issued a parole detainer because new charges were pending against Plaintiff.  (*Id.* at 6.)  On July 11, 2018, Plaintiff was indicted by a federal grand jury on charges related to his March 6, 2018 arrest.  (*Id.*)  Plaintiff "was given a parole hearing and it was decide[d] by the Board that [he] was to be held [as a parole violator pending] until the outcome of the case." (*Id.*)  On October 15, 2018, the Dauphin County District Attorney's Office *nolle prossed* Plaintiff's state charges due to the federal indictment.  (*Id.*)

On October 30, 2018, Plaintiff was transferred to SCI Camp Hill.  (*Id.*)  Upon his release from DCP, Plaintiff asked for the balance of his inmate account and was told it would be sent to SCI Camp Hill.  (*Id.*)  Plaintiff avers that he had approximately $6,498.61 in his inmate account.  (*Id.*)  Two weeks passed with no response from Defendants Hopper and Clark.  (*Id.*)  In November of 2018, Plaintiff

2

contacted Defendant Addison, and he forwarded Plaintiff's grievance to Defendant Clark. (*Id.*) In December of 2018, Plaintiff received a letter from the business office indicating that he owed money to DCP. (*Id.*) Enclosed was a financial responsibility statement indicating that Plaintiff had been a sentenced inmate for 238 days and was therefore charged $2,380.00 for those days. (*Id.*) Plaintiff responded that he had not been sentenced and that he had been a federal inmate. (*Id.*) He argued that he was a "parole violator pending and not a technical PV." (*Id.*) Plaintiff avers that he was then sent a check for $4,118.61. (*Id.*)

On December 12, 2018, Defendant Clark sent a letter to Plaintiff regarding his concerns. (*Id.* at 15.) Defendant Clark quoted the following language from the DCP Financial Responsibility Policy:

> As per Dauphin County Prison's Financial Responsibility Policy, which was adopted by the Prison Board of Inspectors and is outlined in the Inmate Handbook, "*At the time of release, Room and Board charges will be assessed on all sentenced inmates incarcerated at DCP. For purposes of Room and Board charges, a County or State Parole Violation is considered a sentence. Also, sentenced inmates from other counties that have been transferred to DCP will be assessed Room and Board charges.*

(*Id.*) Defendant Clark noted that Plaintiff had been a sentenced inmate from March 7, 2018 through October 30, 2018. (*Id.*) He rejected Plaintiff's argument that he was a federal inmate, stating that the "U.S. Marshals had a detainer lodged against you for when you finished serving time for the case you were being housed on here."

3

(*Id.*)  On January 15, 2019, Plaintiff appealed Defendant Clark's response to the Prison Board.  (*d.* at 18-19.)

On May 13, 2019, Plaintiff filed a complaint in the Court of Common Pleas for Dauphin County against the DCP, Defendant Clark, the Dauphin County Prison Board, and John Doe.  (Doc. No. 11-1.)  In that complaint, Plaintiff alleged that DCP had erroneously charged him for room and board despite his charges being dismissed by the District Attorney's Office.  (*Id.*)  Plaintiff sought $2,380.00 as relief.  (*Id.*)  On August 13, 2019, the Court of Common Pleas sustained the preliminary objections filed by the defendants and dismissed Plaintiff's complaint with prejudice.  (Doc. No. 11-5 at 2-3.)  Plaintiff's motion for reconsideration of that order was denied on September 3, 2019.  (*Id.* at 4.)

On October 31, 2019, Plaintiff received his federal sentence.  (Doc. No. 1 at 7.)  On November 1, 2019, Defendant Lavery, as the solicitor for the Prison Board, sent Plaintiff a response denying his grievance appeal to the Prison Board.  (*Id.* at 24.)  Defendant Lavery explained that because he was being held on a parole detainer "either for new state charges or subsequently for new federal charges," Plaintiff was "a sentenced prisoner on the original conviction upon which the detainer was issued.  In other words, the detainer was in connection with a prior conviction and therefore, you are a sentenced prisoner to whom room and board charges could be assessed."

4

(*Id.*) Plaintiff subsequently appealed to the final level, the Dauphin County Solicitor. (*Id.* at 25.)

On January 20, 2020, the PBPP revoked Plaintiff's parole and changed his status to a convicted parole violator based upon his federal sentence. (*Id.* at 7.) The PBPP gave Plaintiff a recalculated maximum date and controlling minimum date based on the new charges. (*Id.*) The PBPP noted that Plaintiff would serve "24 months back time and did not credit time from July 11, 2018 to October 31, 2019." (*Id.*) On February 18, 2020, Defendant Curcillo, as the Chief Solicitor, denied Plaintiff's grievance appeal. (*Id.* at 26.) Plaintiff avers that he contacted the DCP solicitor, Prison Board chairman, and Defendant Clark and told them that he could not be held financially responsible because the time he spent at DCP was not credited towards his state sentence and because he was not guilty of a new charge. (*Id.* at 8.) Plaintiff avers that he received no response "despite sending them the calculation sheet provided by PBPP." (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights. (*Id.* at 4.) As relief, he seeks $2,380.00, court costs in the amount of $600.00, and for DCP "to rewrite the Financial Responsibility portion of [their] policy so that it may not be implied so broadly and unfairly." (*Id.*

5

at 8.) He also asks to "stop calculating state Parolees time if they are not convicted of any offense." (*Id.*)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed.

7

2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

### A.  Plaintiff's Complaint

Defendants seek dismissal of Plaintiff's complaint for the following reasons: (1) Plaintiff has failed to sue a proper party; (2) Plaintiff has failed to state a claim under § 1983; (3) Plaintiff fails to allege the requisite personal involvement; and (4) the attorney-Defendants are not state actors.  (Doc. No. 11 at 2.)

#### 1.  Proper Party

Defendants maintain that Plaintiff's complaint is subject to dismissal because Plaintiff has brought suit against them in their official capacities only.  (*Id.* at 12-14.)  They assert that "official capacity suits are actions against the municipality, not

9

the individual, and here, the municipality is not a named defendant." (*Id.* at 14.)

In his complaint, Plaintiff states that he has named Defendants "in their official and official capacities." (Doc. No. 1 at 1.) As an initial matter, the Court must liberally construe Plaintiff's *pro se* complaint. It appears that Plaintiff intended to state "official and individual capacities" and mistakenly repeated the word "official" when preparing his complaint.

Official capacity claims under § 1983 are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Here, Plaintiff has not named Dauphin County as a defendant. Therefore, his official capacity claims against Defendants must be construed as claims against Dauphin County. *See Pryor v. Harper*, No. 19-1387, 2021 WL 37628, at *3 (W.D. Pa. Jan. 5, 2021) (concluding same).

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff]

10

must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). In his complaint, Plaintiff explicitly maintains that the Dauphin County Prison's room and board policy led to the alleged violations of his constitutional rights. At this stage of the litigation, and given Plaintiff's *pro se* status, the Court concludes that his allegations plausibly plead an official capacity claim sufficient to meet the *Monell* standard. Accordingly, the Court will not grant Defendants' motion to dismiss on this basis.

### 2. Failure to State a Claim

As noted *supra*, Plaintiff asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights. (Doc. No. 1 at 4.) Defendants assert that his complaint should be dismissed because he has failed to state a plausible claim for relief. (Doc. No. 11 at 14-17.)[1]

---

[1] In his complaint, Plaintiff avers that the DCP room and board policy does not even apply to him because he was not a sentenced inmate within the meaning of the policy. (Doc. No. 1 at 6.) Defendants have addressed this argument as well. (Doc. No. 11 at 16-17.) Pennsylvania law provides that parolees who are charged with violations "of the laws of this Commonwealth" are automatically subject to a detainer. 61 Pa. Cons. Stat. § 6138(b). Moreover, if a parolee is arrested pursuant to an automatic detainer, he may be considered to be a technical violator without a formal

11

### a. Fourth Amendment

Plaintiff asserts that Defendants violated his Fourth Amendment rights to be free from illegal search and seizure and the deprivation of property by charging him the room and board fee for sentenced inmates and keeping $2,380.00 from his prison account. (Doc. No. 1 at 4.) The Supreme Court has noted, however, that "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see also Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (noting that Fourth Amendment rights are "fundamentally inconsistent with incarceration"). Courts have extended this logical to conclude that the Fourth Amendment does not apply to seizures from inmate accounts. *See Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989); *Jackson v. SCI Camp Hill*, No. 1:11-cv-1135, 2012 WL 3990888, at *5 (M.D. Pa. Sept. 11, 2012) (concluding that an inmate "has no Fourth Amendment rights in his prison financial account"), *aff'd*, 530 F. App'x 150 (3d Cir. 2013); *see also Talley v. Pa. Dep't of Corr.*, No. 19-1589, 2019 WL 2866103, at *3 (E.D. Pa. July 2, 2019) (citing *Taylor* and *Jackson* for the same conclusion). Accordingly, Plaintiff's Fourth Amendment claim will be dismissed.

---

conviction. *See id.* § 6138(c). Plaintiff readily admits that he was arrested and charged with state criminal offenses in March of 2018 and that a parole detainer was issued because of those charges. (Doc. No. 1.) A parole violation is considered to be a sentence for purposes of DCP's room and board charges. (*Id.* at 15, 24, 26.)

### b. Eighth Amendment

Plaintiff also maintains that by enforcing the DCP policy, Defendants violated his rights under the Eighth Amendment to be free from the imposition of excessive fines. (Doc. No. 1 at 4.) The Third Circuit has previously considered this "pay-to-stay" issue before and concluded that room and board fees are not punishment but are rather "designed to teach financial responsibility." *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000). Moreover, the Third Circuit concluded that such "fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Id.* In *Tillman*, the Third Circuit concluded that because the provision of life's necessities is not contingent on an inmate's ability to pay for such services, it is permissible for prison authorities to "seek reimbursement from the party receiving the benefit of [this] care." *Id.* at 418-19; *see also Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997).

In 2013, the late Judge Caputo of this Court considered DCP's financial responsibility and room and board policies and determined that they did not violate the Eighth Amendment. *See Heim v. Dauphin Cty. Prison*, No. 3:10-cv-1656, 2013 WL 1833777, at *5-6 (M.D. Pa. May 1, 2013). Instead, he concluded that the "fees imposed pursuant to the DCP's Room and Board fee are 'nonpunitive and related to

13

the legitimate purpose of partially reimbursing' the DCP for housing and treatment services for the inmates they are entrusted to house." *Id.* at *6 (quoting *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012)). Here, Plaintiff challenges the same policy that Judge Caputo previously found constitutional. Accordingly, his Eighth Amendment claim is foreclosed by *Heim* and will be dismissed.

### c. Fourteenth Amendment

Plaintiff also asserts that the deprivation of his funds violated his Fourteenth Amendment procedural due process and equal protection rights. (Doc. No. 1 at 4.) For the reasons set forth below, the Court agrees with Defendants that Plaintiff has failed to set forth a plausible Fourteenth Amendment claim.

#### i. Due Process

The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty, or property without due process. U.S. Const. amend. XIV, § 1. The Third Circuit has recognized that inmates have a property interest in the funds held in their prison accounts. *See Burns v. PA Dep't of Corr.*, 544 F.3d 279, 286 (3d Cir. 2008) (citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)). Identifying what process is due, however, "generally requires consideration of the [following] three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the

> procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (internal citations and quotation marks omitted).

Neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); *Hudson*, 468 U.S. at 533 (intentional deprivation of property does not violate due process if meaningful post–deprivation remedy for loss is available). However, if the deprivation occurs pursuant to a prison policy, the balancing test set forth in *Mathews* must be examined to determine if a pre-deprivation hearing is necessary under the Fourteenth Amendment.

The Third Circuit has considered the requisite level of procedural due process necessary for collection of prisoner room and board fees and has concluded that prisoners cannot be expected to provide pre-deprivation proceedings "even when the inmate refuses to grant authorization." *Tillman v. Lebanon Cty. Correctional Facility*, 221 F.3d 410, 421-22 & n.12 (3d Cir. 2000). Moreover, any assessment

15

errors "may be corrected through the prison's grievance program without any burden on the prisoner's rights." *Id.* at 422. Thus, due process is satisfied where post-deprivation procedures are available through the normal prison grievance system. *Id.*

Plaintiff's due process claim is also foreclosed by Judge Caputo's decision in *Heim*. In *Heim*, Judge Caputo dismissed the plaintiff's due process claim regarding DCP's room and board policy, concluding that it was clear that the plaintiff had notice of both the fee and the grievance policy and that the DCP grievance policy provided a sufficient post-deprivation remedy. *Heim v. Dauphin Cty. Prison*, No. 3:10-cv-1656, 2011 WL 3875998, at *5-6 (M.D. Pa. Aug. 31, 2011). In the instant case, Plaintiff's claim is squarely controlled by *Heim* and *Tillman*. It is clear that Plaintiff had notice of both the room and board fee and the grievance policy during his incarceration at DCP. To the extent Plaintiff asserts that his grievances regarding the fee were mishandled or wrongfully denied, he has not alleged the denial of a federal right. *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's procedural due process claim.

### i.  Equal Protection

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. *See id.* "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language'

17

to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

As an initial matter, neither prisoners nor indigent individuals constitute a suspect class. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2011). Thus, Plaintiff fails to allege that he is a member of a suspect class. Moreover, Plaintiff fails to allege facts suggesting that he was intentionally treated differently from other similarly situated DCP inmates. Plaintiff's allegations amount to nothing more than conclusory language and bald assertions. *See Young*, 160 F. App'x at 266. Moreover, the Third Circuit has recognized that "the purposes of teaching fiscal responsibility and partially recouping the costs of incarceration are surely rationally related to requiring inmates to pay for their share of maintenance." *Tillman*, 221 F.3d at 423. Accordingly, the Court will grant Defendants' motion to dismiss with respect to Plaintiff's Fourteenth Amendment equal protection claim.[2]

---

[2] The Court also agrees with Defendants that Plaintiff has failed to allege the requisite personal involvement and that the attorney-Defendants are not state actors for purposes of § 1983. Like in *Heim*, nothing in Plaintiff's complaint plausibly suggests that any of the named Defendants were responsible for enacting the policy that Plaintiff challenges. *See Heim*, 2013 WL 1833777, at *7. Moreover, Defendants Crucillo, Lighty, Beneventano, Hill, Autry, Lavery, and Edwards, as solicitors and attorneys for Dauphin County and the other Defendants, are not automatically state actors for purposes of § 1983. *See Belkowski v. Kruczek*, No. 2:09-cv-1549, 2010 WL 1433099, at *3 (W.D. Pa. Apr. 7, 2010). "To the extent that an attorney renders advice, drafts

B.   **Leave to Amend**

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). From the foregoing discussion, the Court concludes that it would be futile to permit Plaintiff to file an amended complaint in this matter.

---

correspondence on behalf of a client as to legal disputes, or otherwise engages in litigation and equivalent legal activities, he or she will generally not be subject to liability as a state actor." *Id.* (citing *Angelico v. Lehigh Valley Hosp.,* 184 F.3d 268, 276-78 (3d Cir.1999)). Here, nothing in Plaintiff's complaint suggests that these Defendants invoked the force of the state to accomplish their clients' goals or went beyond their traditional roles to actually make official policy decisions. *See Angelico*, 184 F.3d at 277.

19

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 10) will be granted. Plaintiff will not be permitted to file an amended complaint in the above-captioned case. An appropriate Order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Date: February 4, 2021